**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

$52,915.00 IN UNITED STATES CURRENCY,

    *Defendant-in-rem.*

Civ. No. __21-685__

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Plaintiff, United States of America, brings this complaint in accordance with Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, and alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil action to forfeit and condemn to the use and benefit of the United States of America property involved in violations of the Controlled Substances Act that is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

**DEFENDANT *IN REM***

2. The defendant in rem consists of the following:

    i. Fifty-two Thousand Nine Hundred Fifteen Dollars ($52,915.00) in United States Currency (hereafter referred to as "Defendant Currency").

3. Defendant Currency was seized by the U.S. Drug Enforcement Administration on January 15, 2021, in the District of New Mexico.

4. Defendant Currency is now, and during the pendency of this action will be, in the jurisdiction of this Court.

1

## JURISDICTION AND VENUE

5.      The United States District Court for the District of New Mexico has subject matter jurisdiction under 28 U.S.C. §§ 1345, 1355(a) and 1356.

6.      Venue for this civil forfeiture action is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395, as acts or omissions giving rise to the forfeiture took place in this district and the property is found in this district.  Upon the filing of this complaint, Defendant Currency will be arrested by execution of a Warrant for Arrest *In Rem* in the District of New Mexico.

## FACTS

1.      On December 3, 2020, Lea County Sheriff's Office ("LCSO") deputies were dispatched to 609 E. Humble, Hobbs, New Mexico, in reference to a stolen Polaris Ranger (a Utility Terrain Vehicle (UTV)).  LCSO deputies confirmed the Polaris Ranger was present at the residence and confirmed it to be stolen.

2.      Soon thereafter, LCSO deputies located Gabriel Miller and another male in the backyard of the residence.  They also located a 2015 gold Cadillac Escalade in the backyard with a white enclosed trailer attached to it.

3.      LCSO deputies confirmed that the white enclosed trailer attached to the Cadillac Escalade was stolen.  They also determined that the Escalade pulling the stolen trailer was owned by Gabriel Miller.

4.      LCSO deputies secured the residence and vehicle.  They then approached Miller and advised him of his *Miranda* rights.  Miller chose to waive his rights and speak with deputies, whereafter he admitted that he was the owner of the Gold Escalade.

2

5.      While speaking with LCSO Deputy Sheriff S. Ibarra, Miller admitted to having "bud" inside the vehicle. Deputy Ibarra asked Miller if he had "weed" in the vehicle, to which Miller replied "yea." Miller explained that, in fact, he had pounds of marijuana in the vehicle.

6.      Miller explained that he owned a wholesale cannabidiol ("CBD") business. Deputy Ibarra asked Miller if he had the necessary license ("card") to distribute marijuana in New Mexico. Miller did not respond.

7.      Deputy Ibarra authored a state search warrant to search the vehicle, which was signed. He then searched Miller's vehicle and located a brown bag containing a large amount of currency on the floorboard behind the central console of the vehicle, right next to a red bag containing multiple bags of a green, leafy substance.

8.      Deputy Ibarra spoke with Miller concerning the currency, and Miller claimed the currency was procured during the sale of his CBD business. Miller further claimed that he was transporting the currency so that he could purchase a vehicle. He argued that the green, leafy substance in his vehicle was not marijuana, but rather, CBD products.

9.      Deputy Ibarra contacted the New Mexico Department of Health Marijuana Card Law Enforcement Hotline ("the Hotline") to ascertain whether Miller had a marijuana card that allowed him legally to distribute marijuana products. The Hotline stated that Miller did not.

10.     In total, Deputy Ibarra seized eleven bags of a green, leafy substance from Miller, in addition to Defendant Currency. The bags were individually weighed and cataloged as Item One through Item Eleven.

11.     On December 21, 2021, Deputy Ibarra received marijuana and hemp testing kits from Drug Enforcement Administration ("DEA") Special Agent M. Noel. With the assistance of LCSO Evidence Custodian N. Dominguez, Deputy Ibarra performed tests on two of the eleven

seized bags, which he chose at random. These bags – marked Item 3 and Item 10 - each contained a green, leafy substance.

12. Deputy Ibarra tested Item 3 and Item 10. Both Item 3 and Item 10 returned positive presumptive tests for drug hemp and marijuana.

13. On January 21, 2021, DEA SAs Noel and J. Topp assumed custody of the eleven bags of suspected marijuana, designated Item One though Item Eleven. The suspected marijuana had an approximate gross weight of 5.7 kilograms and approximate net weight of 4.9 kilograms. The DEA SAs forwarded the evidence to a DEA laboratory for further testing.

14. DEA SAs Noel and Topp also seized Defendant Currency pursuant to a federal seizure warrant. On January 22, 2021, DEA SAs Noel and Topp performed a count of Defendant Currency at Citizens Bank of Las Cruces, where it was determined that Defendant Currency consisted of $52,915.00 USD.

15. On March 4, 2021, the DEA South Central Laboratory in Dallas, Texas, performed an analysis of the eleven bags of green, leafy substance. According to DEA South Central Laboratory Associate Laboratory Director B. Vasquez, the DEA South Central Laboratory employs a testing methodology that considers a 1% level of tetrahydrocannabinol ("THC") in a marijuana exhibit as a "positive" result for marijuana, which is considerably higher than the legal level of 0.3%. If a marijuana exhibit is analyzed and a report is issued, the results can be either marijuana (meaning that the THC is above 1% in each of the units) or inconclusive (it is under 1%).

16. Analysts selected nine of the eleven bags for analysis, and eight of the nine returned positive results for marijuana. During the examination, analysts used the 4-AP color test, gas

chromatography/mass spectrometry, and macro/microscopic examination of plant material to reach their conclusions.

### FIRST CLAIM FOR RELIEF

17. The United States incorporates by reference the allegations in paragraphs 1 through 16 as though fully set forth.

18. Title 21, United States Code, Section 881(a)(6) subjects to forfeiture "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

19. Defendant Currency was furnished, or intended to be furnished, in exchange for a controlled substance, or constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act and is thus subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE: Plaintiff seeks arrest of Defendant Currency and forfeiture of same to Plaintiff, determination of the validity and priority of claims of the Claimants and any Unknown Claimants to the Defendant Currency, costs and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

FRED J. FEDERICI
Acting United States Attorney

STEPHEN R. KOTZ
KRISTOPHER DALE JARVIS
Assistant U.S. Attorneys
200 N. Church Street
Las Cruces, NM 88001
(575) 522-2304

## 28 U.S.C. § 1746 DECLARATION

I am a Special Agent with the U.S. Drug Enforcement Admnistration who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Dated: 7-26-2021

*Mitchell Noel*
Mitchell Noel, Special Agent
U.S. Drug Enforcement Administration